## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHINOK PARK, | |
| *Plaintiff*, | |
| v. | Civil Action No. 21-2448 (RDM) |
| BRUCE M. BENDER, | |
| *Defendant*. | |

## MEMORANDUM OPINION

Plaintiff Shinok Park, proceeding *pro se*, filed this action against her former attorney, Bruce Bender, for fraud, unlawful detention of personal property, unjust enrichment, malpractice, spoliation of evidence, and breach of fiduciary duties.  Dkt. 1 at 6.  Bender moves to dismiss on the ground that Plaintiff's suit is barred under the doctrines of res judicata and collateral estoppel.  Dkt. 7 at 2. Park has since moved to amend her complaint, Dkt. 17, which Bender opposes, Dkt. 21.  For the reasons that follow, the Court will **GRANT** Bender's motion to dismiss and will **DENY** Park's motion for leave to amend the complaint as futile.

## I.  BACKGROUND

For purposes of the pending motion to dismiss, the following facts, which are largely taken from Plaintiff's complaint, are accepted as true.  *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  The Court, moreover, takes judicial notice of the public records—included as attachments to Bender's motion to dismiss—that document the previous litigation between Park and Bender's law firm in Maryland state court and between Plaintiff and her former supervisor in D.C. Superior Court.  *See Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019) ("District courts may, at the Rule 12(b)(6) stage, take judicial

notice of publicly filed pleadings in related actions as evidence of what was alleged in the other actions . . . ."); *see also EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice.").

## A.     Bender's Representation of Park

In May 2017, Park retained Bender, an attorney at the Maryland law firm of Axelson, Williamowsky, Bender & Fishman, P.C. ("AWB&F"), to represent her in a then-ongoing civil suit in D.C. Superior Court against her former supervisor, Milan Brahmbhatt. Dkt. 1 at 1–2 (Compl. ¶¶ 1–2, 5); *see also* Dkt. 7-4 at 18. In that suit ("the sexual assault case"), Park alleged that, while Brahmbhatt was her supervisor at the World Bank, he engaged in sexual assault, battery, intentional inflection of emotional distress ("IIED"), blackmail, and tortious interference with contract and business relations—although the latter three counts had been dismissed by the D.C. Superior Court before Park retained Bender. Dkt. 1 at 2 (Compl. ¶ 5); Dkt. 7-4 at 5, 15. Beginning in February 2018, Bender also represented Park in the appeal of a civil defamation suit against Brahmbhatt and his lawyer, Peter Hansen, which was pending before the D.C. Court of Appeals at the time. Dkt. 1 at 1–2 (Compl. ¶¶ 2, 7). According to Park's complaint, Bender and Brahmbhatt had a "personal" relationship that Bender failed to disclose to Park, although she does not describe the nature of the relationship. Dkt. 1 at 2 (Compl. ¶ 6).

After Bender joined the sexual assault case as Park's attorney, a jury trial was set to proceed on the sexual assault, battery, and IIED counts. Dkt. 7-4 at 20. Park's concerns with Bender's representation arose, in the first instance, during pre-trial discovery. She alleges that Bender "misguided" her when he "advised [her] to lie during depositions," Dkt. 1 at 2, 6 (Compl.

¶¶ 9, 39), "advised [her] that she could contact witnesses and encourage them to not attend [their own] depositions," *id.* at 3 (Compl. ¶ 11), and "encouraged [her] to lie to the jury about the validity of certain evidence and facts," *id.* (Compl. ¶ 15).  Park was sanctioned with a $3,000 penalty for this conduct—a sanction that Bender allegedly later raised during trial "to the detriment of Plaintiff's credibility."  *Id.* at 3 (Compl. ¶¶ 12–13).  She also contends that, during discovery, Bender precluded her from viewing evidence that he received from Google on her behalf, notwithstanding the fact that he shared that evidence with Peter Hansen, counsel for Brahmbhatt.  *Id.* (Compl. ¶ 14).

In June 2018, Superior Court Judge Hiram Puig-Lugo presided over a ten-day jury trial on Park's remaining claims against Brahmbhatt.  *Id.* at 2 (Compl. ¶¶ 5, 8); Dkt. 7-4 at 30. During the trial, Bender allegedly continued to engage in misconduct: he allegedly "changed and altered Plaintiff's exhibits without discussing the changes with her" or showing her the final exhibits, *id.* at 4 (Compl. ¶¶ 20, 22–23), "submitted additional exhibits that [Park] had never seen or approved," *id.* (Compl. ¶ 21), "failed to provide [her] with copies of . . . [27] defense exhibits," *id.* (Compl. ¶¶ 24–25), and "continued to use and pay expert witnesses" against Park's express wishes, *id.* (Compl. ¶ 26).  After the close of evidence and deliberation, the jury returned a verdict in Park's favor on her IIED claim, awarding her $15,000 in damages, *id.* at 3 (Compl. ¶¶ 16–17), and a verdict in Brahmbhatt's favor on the sexual assault and battery claims, *id.* (Compl. ¶ 16).  The Court granted Brahmbhatt's motion for judgment notwithstanding the verdict on the IIED claim, however, and entered judgment in Brahmbhatt's favor.  *Id.* (Compl. ¶ 18).  Two months later, the Court also granted Brahmbhatt's motion for $150,000 in attorney's fees and costs—a sum Park alleges "amounted to around the fair market value of [her] investment rental condominium property at the time."  *Id.* at 5 (Compl. ¶ 30); Dkt. 7-4 at 34.

After the return of the jury verdict, Bender contacted Park, alleging that she owed him over $160,000 in previously undiscussed fees. *Id.* at 4 (Compl. ¶ 27). He indicated, moreover, that he would halt his representation of her in the defamation appeal if she did not pay his fees within two weeks. *Id.* at 4 (Compl. ¶ 28). Park declined to pay the fees, and Bender "stopped representing [her] in her trial case and appeal." *Id.* at 4 (Compl. ¶ 29).[1] Bender then allegedly "became unresponsive," "refusing to respond to Plaintiff's emails and phone calls" or to "her requests for copies of her trial exhibits and case files used in both the trial and appeal cases." Dkt. 1 at 5 (Compl. ¶ 31). He continued to send Park legal bills, however, which he "claimed were for continued representation and finance charges on her outstanding balance." *Id.* (Compl. ¶ 32). In October 2019, after Park had retained a new attorney, Bender responded to Park's emails, stating that he had "given [her] all of her exhibits" and "demanded $1,500 for the production of said exhibits." *Id.* (Compl. ¶ 33).

Not until November 2019 did Bender and Brahmbhatt's attorney send Park a selection of final trial exhibits via email, at which point Park apparently discovered that Bender "had made damaging changes to her original draft exhibits" and that "exhibits she had never before seen or had the opportunity to reply to had been used in the trial." *Id.* (Compl. ¶¶ 34–35). Although Park has appealed the jury verdict in the sexual assault case to the D.C. Court of Appeals, her "appeal remains in jeopardy because Defendant continues to withhold over 30 exhibits from [her]"—indeed, the Court of Appeals has already once dismissed the appeal without prejudice because Park was "unable to prepare her appeal brief and appendix without copies of the trial exhibits from [Bender]." *Id.* (Compl. ¶¶ 36–37).

---

[1] The D.C. Court of Appeals eventually affirmed the D.C. Superior Court's grant of summary judgment against Park in the defamation suit. *See Park v. Brahmbhatt*, 234 A.3d 1212 (D.C. 2020).

**B.      The Maryland Litigation**

In May 2019, AWB&F sued Park in the Circuit Court for Montgomery County,

Maryland.  *See* Dkt. 7-2 at 2.  AWB&F sought recovery of unpaid attorney's fees under two

retention agreements it had entered with Park: one as to the sexual assault case against

Brahmbhatt and one as to the defamation appeal.  Dkt. 7-3 at 2–3.  After a failed attempt to

remove the suit to federal court, Park answered and filed a counterclaim, which she later

amended (the "Maryland counterclaims").  *Id.* at 4–5; Dkt. 7-2 at 6–9.  In her amended

counterclaims, Park brought claims against AWB&F for breach of contract (Count I),

professional negligence (Count II), breach of fiduciary duties (Count III), evidence spoliation

(Count IV), and intentional misrepresentation (Count V).  Dkt. 7-1 at 8–18.

The Maryland counterclaims centered on Bender's representation of Park, both during the

sexual assault case and the defamation appeal.  *Id.*  Much like the complaint in this case, the

Maryland counterclaims recounted Park's retention of Bender, the jury trial, the resulting dispute

about Bender's fees, Bender's unresponsiveness after trial, Bender's alleged manipulation and

withholding of exhibits from Park, and the effect of Bender's conduct on her ability to pursue her

appeal.  *Id.* at 1–8.  The counterclaims allege, on these points, that AWB&F breached its contract

with Park and engaged in professional negligence when it, through its principals, "failed to

amend the complaint against Mr. Brahmbhatt," "failed to produce an appeal argument on the

dismissal of the defamation case through summary judgment," "failed to timely address the

issues regarding the fabrication/authenticity of certain [evidence]," "failed to prepare and advise

Ms. Park properly regarding her testimony," "instructed Ms. Park to provide false testimony,"

"altered Ms. Park's medical record without her knowledge," and "litigated Ms. Park's sexual

assault case in a way which subjected her to sanctions in the amount of $153,000," among other

actions. *Id.* at 9–14.  As a direct and proximate result of these actions, Park asserted that she

"suffered significant damages, including . . . loss[es] in the defamation case appeal and the

sexual assault case." *Id.* at 11, 14.

Park also alleged in her counterclaims that AWB&F breached its fiduciary duties to her

when "it . . . continued to pay two IT forensic experts . . . against her verbal and written

instructions," "paid a private investigator . . . without any consultation with Ms. Park," "paid

conference room rental[s]" and other deposition-related costs, and failed to correct its bills in

response to Park's complaints. *Id.* at 14–15.  As to the spoliation count, Park alleged that

AWB&F spoliated, through its principals and agents, her evidence by making "damaging

alterations" to her exhibits, concealing Google's response to her subpoena, and blocking her

preferred expert from testifying. *Id.* at 15–17.  Finally, Park alleged that AWB&F "knowingly

and willfully made misrepresentation[s] when" its principals or agents advised Ms. Park to

"contact her trial witnesses and tell them not to go to the depositions," "lied to [her] . . . about

Google's response to her subpoena," and "wrote a letter to then-assigned [J]udge

Edelman . . . that there was no issue between the parties in forensic examination of the

defendant's alleged email and online chat communications." *Id.* at 17–18.

AWB&F moved for summary judgment on both its breach-of-contract claim and on

Park's amended counterclaims.  Dkt. 7-2 at 14, 16.  Park apparently failed to respond in a timely

fashion to AWB&F's request for admission of facts, and the Maryland court consequently—and

notwithstanding several motions for reconsideration by Park—deemed AWB&F's facts to be

admitted.  Dkt. 7-3 at 5.  In an October 2021 memorandum opinion, Judge Storm granted

AWB&F's motions for summary judgment as to its own breach-of-contract claim and as to

Park's amended counterclaims. *Id.* at 2.  In relevant part, Judge Storm concluded that AWB&F

and Park entered into two valid contracts, that Park failed to pay AWB&F for services rendered, and that Park failed to demonstrate, either by expert testimony or by pointing to AWB&F's errors, that AWB&F engaged in legal malpractice.  *Id.* at 7–8.

The court concluded, moreover, that "the evidence [did] not support . . . [Park's] claim that [AWB&F] was acting in any way in violation of its fiduciary duties, or the parties['] agreement," *id.* at 9, and that Park's claim for intentional misrepresentation failed because, at a minimum, "Park [could not] show that she suffered any damage as a result of any purported misrepresentation," *id.* at 10.  The court also determined, based on Park's admissions of fact, that "[t]he only damages [Park] seeks are $153,000 related to sanctions that were imposed against her resulting from her own conduct, not that of counsel."  *Id.* at 8 n.9.  And because Maryland does not recognize spoliation of evidence as an independent cause of action, the court granted summary judgment for AWB&F on that claim.  *Id.* at 9–10.  Accordingly, the Maryland court entered judgment in AWB&F's favor for $159,656.25, plus prejudgment interest.  Dkt. 7-2 at 21. Park has since appealed that judgment to the Maryland Court of Special Appeals, *id.*, and the appeal remains pending as of this Court's decision, *see Park v. Axelson Williamowsky Bender & Fishman PC*, No. CSA-REG-1486-2021 (Md. Ct. Spec. App.).

## C.   Procedural History

Park filed the instant suit on September 14, 2021, Dkt. 1 at 1 (Compl.), alleging fraud, unlawful detention of personal property, unjust enrichment, misrepresentation, malpractice, spoliation of evidence, and breach of fiduciary duties, *id.* at 6.  More specifically, she contends that Bender "committed the tort of fraud" when he promised to perform "truthful and ethical legal services," when he "'knowingly and willfully' misguided Plaintiff" towards sanctionable conduct, and "deliberately altered Plaintiff's trial exhibits."  *Id.* (Compl. ¶¶ 38–40).  She further

alleges that Bender "committed the tort of legal malpractice when he failed to fully represent and advocate" for her, that he unlawfully retained her trial exhibits and improperly spent her money on witnesses, and that he engaged in "spoliation of evidence" when he "shared with [Brahmbhatt's] counsel the privileged and confidential information given to him by Plaintiff." *Id.* (Compl. ¶¶ 41–43).

Bender moved to dismiss Park's complaint as barred by principles of res judicata and collateral estoppel on December 31, 2021.  Dkt. 7.  On February 3, 2022, Park moved for leave to file an amended complaint out of time, Dkt. 17, which Bender opposed, Dkt. 21.  Park then filed an additional out-of-time pleading, further opposing Bender's motion to dismiss.  Dkt. 25. The Court denied Bender's motion to strike this pleading, *see* Apr. 21, 2022 Min. Order, and will accordingly consider it here.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see* Fed. R. Civ. P. 12(b)(6).  A complaint need not include "detailed factual allegations" and may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," as long as the facts alleged in their complaint are "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  The complaint must be construed in the light most favorable to the plaintiff and "the court must assume the truth of all well-pleaded allegations."  *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004).  On a Rule 12(b)(6) motion, the Court is limited to considering "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice."  *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624.  Where, as here, the res

judicata "defense appears on the face of the complaint and any matters of which the court may take judicial notice," the Court may consider the defense in a motion brought under Rule 12(b)(6). *Sheppard v. District of Columbia*, 791 F. Supp. 2d 1, 1 n.3 (D.D.C. 2011); *see also Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 45 (D.D.C. 2017) ("When *res judicata* bars a claim, it is subject to dismissal under Rule 12(b)(6).").

A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure," *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009), and a *pro se* complaint must "still 'present a claim on which the Court can grant relief' to withstand a Rule 12(b)(6) challenge," *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (citations omitted).

### III.  ANALYSIS

#### A.    Res Judicata

Bender moves to dismiss Park's complaint as precluded under the doctrines of res judicata and collateral estoppel by the Maryland court's grant of summary judgment to AWB&F on Park's counterclaims.  Dkt. 7 at 2.  This Court is required to give a state-court judgment, such as the Maryland decision here, "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984), and must, accordingly, "accept" the res judicata and collateral estoppel rules "chosen by the State from which the judgment is taken," *Marrese v. Am. Acad. Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citation omitted); *see also Allen v. McCurry*, 449 U.S. 90, 95 (1980); *Presidential Bank, FSB v. 1733 27th St. SE LLC*, 404 F. Supp. 3d 1, 11 (D.D.C. 2019); *Brewer v. District of Columbia*, 105 F. Supp. 3d 74, 85 (D.D.C. 2015).

As relevant here, Maryland courts have decided that res judicata bars subsequent litigation where "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation." *R & D 2001, LLC v. Rice*, 938 A.2d 839, 848 (Md. 2008).

Maryland courts have explained that the "somewhat allied" doctrine of collateral estoppel, or issue preclusion, provides that, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* at 848–49 (alteration omitted) (quoting *Janes v. State*, 711 A.2d 1319, 1324 (Md. 1998)). In other words, "[i]ssue preclusion means that if a previous case took place between the same parties or their privies, and the fact-finder made a finding that was 'essential to' the judgment entered, all future cases between those parties are stuck with that finding and cannot re-litigate the question." *Mostofi v. Midland Funding, LLC*, 117 A.3d 639, 696 (Md. Ct. Spec. App. 2015). "These two doctrines serve the same judicial policy: that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised, or that should have been raised." *Id.* at 696–97 (internal quotation marks and citation omitted).

Because the Court agrees with Bender that all of Park's claims are barred by res judicata, the Court need not consider the collateral estoppel effect of the Maryland court's holdings. The Court evaluates each requirement of res judicata in turn.

1.    *Same Parties or Parties in Privity*

The "parties in the present litigation" are not precisely the "same" as those involved in the Maryland litigation, which occurred between AWB&F and Park.  *R & D 2001*, 938 A.2d at 848.  Maryland courts have clarified, however, that the parties need not be "precisely identical" where the subsequent litigant is "so identified in interest with [the party to the previous suit] that [the person] represents the same legal right."  *Bank of N.Y. Mellon v. Georg*, 175 A.3d 720, 744 (Md. 2017) (second alteration in original) (citation omitted); *see also Kim v. Council of Unit Owners for Collington Ctr. III Condo.*, 952 A.2d 346, 353 (Md. Ct. Spec. App. 2008).  If, in other words, a person, "although not [a] formal part[y] of record, [has] a direct interest in the suit, and in the advancement of [his] interest take[s] open and substantial control of its prosecution," or is "so far represented by another that [his] interests receive actual and efficient protection, any judgment recovered therein is conclusive upon [him] to the same extent as if [he] had been [a] formal part[y]."  *Bank of N.Y. Mellon*, 175 A.3d at 744 (quoting *Ugast v. La Fontaine*, 55 A.2d 705, 708 (Md. 1947)).

Here, the party against whom res judicata is invoked—Park—was herself a party to the prior action.  It is only Bender, the party who now seeks to invoke res judicata, who was not a formal party to the Maryland litigation.  Maryland courts have dubbed this an "important[]" distinction in their privity analyses, *Worsham v. Friends of Marilyn Mosby*, 12-C-17-001456, 2020 WL 4000879, at *4 (Md. Ct. Spec. App. July 15, 2020), because the question of privity centers on "whether the interests of the party *against* whom estoppel is sought were fully represented, with the same incentives, by another party in the prior matter," *Mathews v. Cassidy Turley Md., Inc.*, 80 A.3d 269, 294 (Md. 2013) (emphasis added) (applying this distinction in the context of collateral estoppel); *see Worsham*, 2020 WL 400879, at *4 n.8 (noting that "[t]he

same analysis applies to res judicata").  The Maryland Court of Appeals has therefore "relaxed somewhat the strict requirements of privity and mutuality[]" for cases where the defendant may not necessarily be in privity with the "defendant to the first suit." *deLeon v. Slear*, 616 A.2d 380, 389 n.5 (Md. 1992).

Against the backdrop of these relaxed privity standards, the Court considers whether Bender is sufficiently "identified in interest" with AWB&F that they "represent[] the same legal right." *Bank of N.Y. Mellon*, 175 A.3d at 744.  In the Maryland counterclaims, Park alleged that AWB&F was liable for the actions of "its actual or apparent principals, agents and/or employees"—most centrally for those of Bender himself. *E.g.*, Dkt. 7-1 at 11.  Bender and AWB&F's interests in defending against Park's allegations appear, therefore, to be identical: Park's assertions against AWB&F in the Maryland counterclaims are coterminous with her allegations against Bender here, and the counterclaims did not enumerate allegations against any other AWB&F employees aside from Bender.  *See generally* Dkt. 7-1.  The instant suit is therefore akin to the case of *deLeon v. Slear*, 616 A.2d 380 (Md. 1992), where the Maryland Court of Appeals concluded that there was "privity between . . . nurses and [a] hospital" when a plaintiff asserted that "the hospital, a corporation, was liable for defamatory statements allegedly made by its [nurses]" and had previously litigated the same claims against the nurses themselves. *See id.* at 389.[2]

---

[2] Park alleged in the Maryland counterclaims that Bender is a "lawyer of the Firm," Axelson, Williamowsky, *Bender*, & Fishman. Dkt. 7-1 at 2.  Although neither party addresses the question, the law firm's name suggests that Bender is a partner of the firm, and Maryland courts have, at least on occasion, considered partners in privity with their partnerships. *Cf. Winmark Ltd. P'ship v. Miles & Stockbridge*, 674 A.2d 73, 85 (Md. Ct. Spec. App. 1996) (finding general partners "totally and inextricably aligned" in privity with their limited partnership for purposes of judicial estoppel), *rev'd on other grounds*, 693 A.2d 824 (Md. 1997).

Park argues that AWB&F and Bender are nevertheless not in privity because AWB&F's complaint in Maryland addressed "bills from not only Defendant Bender, but also [three other] attorneys of the firm" and that "[t]he counterclaim . . . Park raised in [the Maryland] lawsuit was confined in that scope." Dkt. 20 at 5. The fact that AWB&F's complaint may have raised fee disputes as to other attorneys, however, does not limit the scope of Park's counterclaims or AWB&F's interest in defending against those counterclaims. Regardless of any allegations in AWB&F's complaint against Park, AWB&F and Bender share, in these two lawsuits, the same interest in establishing that Bender did not engage in legal malpractice, violate his fiduciary duties to Park, or engage in tortious conduct while serving as Park's attorney. Because Bender's interests were "so far represented by" AWB&F in the Maryland litigation that he "receive[d] actual and efficient protection," then, Bender and AWB&F are in privity. *See Bank of N.Y. Mellon*, 175 A.3d at 744 (quoting *Ugast*, 55 A.2d at 708).

      2.   *Same Claims*

For res judicata to apply, Park must also be attempting to relitigate the same "claim" or "cause of action" in the instant complaint as she did in the Maryland counterclaims. *See deLeon*, 616 A.2d at 389. Under Maryland law, courts apply the so-called "transaction" test to determine whether claims are the same. *See Kent Cnty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987). The transaction test, in turn, defines a "claim" to "include[] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose." *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. Ct. Spec. App. 2002). Whether a claim is part of the same transaction turns, furthermore, on "such considerations as whether the facts are related in time, space, origin or motivation, whether

they form a convenient trial unit, and whether their treatment as a unit conforms to the parties'
expectations." *FWB Bank v. Richman*, 731 A.2d 916, 928 (Md. 1999).

The Maryland counterclaims and Park's complaint in this case are clearly "related in
time, space, [and] origin." *See id.* Both suits address Bender's representation of Park in and
leading up to the June 2018 trial in D.C. Superior Court and his engagement as her appellate
counsel as to her defamation case in the D.C. Court of Appeals. *Compare* Dkt. 7-1 at 2–8, *with*
Dkt. 1 at 1–5. The factual allegations in the two complaints mirror one another almost perfectly:
in each instance, Park contends that Bender encouraged her to engage in sanctionable conduct,
Dkt. 7-1 at 10, 13; Dkt. 1 at 2–3 (Compl. ¶¶ 9, 11–12, 15); lied to her about Google's response to
her subpoena, Dkt. 7-1 at 17; Dkt. 1 at 3 (Compl. ¶ 14); altered and withheld trial exhibits from
her, Dkt. 7-1 at 5–7; Dkt. 1 at 4 (Compl. ¶¶ 20–25); retained experts and investigators against her
express instruction, Dkt. 7-1 at 14; Dkt. 1 at 4 (Compl. ¶ 26); and surprised her with fees she
never agreed to pay, Dkt. 7-1 at 4, 8–11; Dkt. 1 at 4 (Compl. ¶¶ 27–29). The two suits therefore
"form a convenient trial unit," as "the witnesses or proofs" relevant to the complaint against
Bender "tend to overlap [with] the witnesses or proofs relevant to the first." *Smalls v. Md. State
Dep't of Educ.*, 127 A.3d 610, 619, 624 (Md. 2015) (citations omitted). The Maryland
counterclaims and the instant action arise, moreover, from the same literal "transaction or series
of connected transactions," *Boyd*, 806 A.2d at 326—here, the two retention agreements between
Park and AWB&F as to the sexual assault case in D.C. Superior Court and the defamation appeal
in the D.C. Court of Appeals, Dkt. 1 at 1–2 (Compl. ¶¶ 2, 5, 7); Dkt. 7-1 at 2–3.

To be sure, the legal theories advanced by Park are not identical in the two cases. As
Bender himself notes, Park's complaint against him raises claims based on "unjust enrichment"
and "unlawful detention of personal property" that were not presented in the Maryland

counterclaim.  Dkt. 7 at 6–7.  But res judicata bars not only the exact legal arguments addressed in the original litigation; it also bars other claims that "could have been made" in the original litigation and that arise from the same series of transactions as the claim that was adjudicated. *Smalls*, 127 A.3d at 616–17 ("Res judicata is concerned not only with what was, but with what could have been.").[3]  "[A] mere change in the legal theory, applied to the same set of facts previously litigated, will not in and of itself avoid claim preclusion."  *Bilbrough*, 525 A.2d at 236.  Because the unjust-enrichment and unlawful-detention claims are predicated on the same transactions litigated in the Maryland counterclaim, the new legal theories present in the instant suit do not change the Court's conclusion as to res judicata.

In Park's "supplemental memorandum" in support of her motion for leave to file an amended complaint, Park for the first time asserts that her suit is not barred by res judicata because Maryland has adopted "special rules of res judicata in the context of counterclaims."

---

[3] There is perhaps a colorable argument that the spoliation-of-evidence claim advanced in both the Maryland litigation and in the instant suit "could" not really "have been litigated" in the previous case because Maryland apparently does not "recognize such a[] claim as an independent cause of action."  *See* Dkt. 7-3 at 9–10; *see also Anne Arundel Cnty. Bd. Of Educ. v. Norville*, 887 A.2d 1029, 1039 (Md. 2005) (suggesting that a novel theory of liability might survive a dismissal based on res judicata if the new theory of liability did not exist when the first action was litigated).  Park has, however, not even gestured towards her spoliation claim in her opposition to Bender's motion to dismiss and has thus waived any argument that the spoliation claim should survive the dismissal here.  *See, e.g.*, *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, 268 F. Supp. 3d 61, 72 (D.D.C. 2017).  Nor has Park addressed whether this Court would, if considering the merits of this case, apply D.C. tort law—which recognizes an "independent and actionable tort" for negligent or reckless spoliation of evidence, *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 847 (D.C. 1998)—or whether Maryland law would govern this action, as the Maryland court assumed it did in deciding the counterclaim.  In any event, even if D.C. law governed, Park's allegation that Bender engaged in spoliation "when he *shared* with [Brahmbhatt's] counsel the privileged and confidential information given to him by Plaintiff," Dkt. 1 at 6 (Compl. ¶ 43) (emphasis added), fails, at a basic level, to allege the essential element of "*destruction* of . . . evidence by [a] duty-bound defendant," *Cook v. Children's Nat'l Med. Ctr.*, 810 F. Supp. 2d 151, 155 (D.D.C. 2011) (emphasis added) (quoting *Holmes*, 710 A.2d at 854)).

Dkt. 25 at 6–7.  Because Maryland has no compulsory counterclaim rule, Park argues, "the defendant has a choice as to whether or not [s]he will pursue [her] counterclaim in the action brought against [her] by the plaintiff," and res judicata thus does not bar a plaintiff from later asserting a claim that she could have raised in a counterclaim.  *Id.* at 7 (quoting *Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 655 A.2d 1265, 1270 (Md. 1995)).  This argument is unavailing.

It is true that Maryland's counterclaim rule "is permissive rather than mandatory," *Moore v. Nissan Motor Acceptance Corp.*, 831 A.2d 12, 16 (Md. 2003), and that failure to bring a counterclaim does not necessarily "preclude a subsequent action of that claim" unless the subsequent action would "nullify the initial judgment or would impair rights established in the initial judgment," *Rowland v. Harrison*, 577 A.2d 51, 56–57 (Md. 1990) (quoting Restatement (Second) of Judgments § 22(2)(b) (Am. L. Inst. 1982)).  This approach to res judicata preserves the permissive nature of Maryland's counterclaim rule and ensures that a defendant can "bring suit at a time and place of his own selection," rather than "assert his claim in the forum or the proceeding chosen by the plaintiff."  *Id.* at 55 (quoting Restatement (Second) of Judgments § 22(1) cmt. a).  If Park had decided not to assert counterclaims against AWB&F in Maryland, then, it is at least plausible that she could have raised some of her pending claims against Bender here, unless successful prosecution of the instant suit would have nullified the Maryland judgment.

But the Restatement's approach governs only where a defendant *may* plead a counterclaim but "fails to do so," Restatement (Second) of Judgments § 22(1), and Maryland courts have thus limited this rule to those contexts where a counterclaim was not adjudicated in the first judgment.  *See, e.g.*, *Rowland*, 577 A.2d at 52 (observing that plaintiff was allowed to voluntarily dismiss her negligence counterclaim in prior action without prejudice prior to

litigation); *Fairfax*, 655 A.2d at 1275 ("[T]he case before us does not involve a counterclaim filed in the [prior] foreclosure action . . . ."); *Moore*, 831 A.2d at 17 ("Moore did not assert any counterclaim in the [prior] action . . . ."); *Rodney George Living Tr. v. Mayor of Balt.*, No. 24-C-18-004753, 2020 WL 1330333, at *6–7 (Md. Ct. Spec. App. Mar. 20, 2020) (explaining the limited contexts in which "a party who *failed to impose a permissive counterclaim* is barred from raising the claim in a subsequent action" (emphasis added)).  Where, as here, the plaintiff actually asserted a counterclaim in the first suit, and where the Court entered judgment upon that counterclaim, the Restatement § 22(1) rule does not transform the rules of res judicata to allow "[l]egal theories . . . [to] be divided and presented in piecemeal fashion in order to advance them in separate actions," *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 887 A.2d 1029, 1038 (Md. 2005), merely because the first of those actions was a permissive counterclaim.  *See Horowitz v. Cont'l Cas. Co.*, No. 14-cv-3698, 2015 WL 9460111, at *3 (D. Md. Dec. 28, 2015) (rejecting the notion that "claim preclusion [categorically] does not apply where . . . the earlier claims were permissive counterclaims"), *aff'd*, 681 F. App'x 198 (4th Cir. 2017).  Because Park chose to litigate these claims as counterclaims in Maryland, the usual rules of res judicata govern.

    3.   *Final Judgment on the Merits*

       The third and final prong of the res judicata analysis requires a "[(1)] final judgment [(2)] rendered on the merits in the first suit, [(3)] by a court of competent jurisdiction."  *Boyd*, 806 A.2d at 325 (collecting cases).  Neither party contests in earnest that the Maryland court was a court of "competent jurisdiction"—although Park gestures that the Maryland court's "arbitrary and inaccurate judgment that should be corrected" makes it "questionable whether to call the Circuit 'competent jurisdiction.'"  Dkt. 20 at 7.  The Maryland court's decision, moreover, clearly constitutes a "final judgment," notwithstanding Park's argument that the pending appeal

affects the judgment's finality. *See id.* at 7; Dkt. 24 at 3. Summary judgment is a "final judgment" for purposes of res judicata, *see, e.g.*, *Powell v. Breslin*, 59 A.3d 531, 538 (Md. 2013) (giving res judicata effect to a grant of summary judgment), and "the pendency of an appeal does not affect the finality of a judgment," *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1041 (Md. Ct. Spec. App. 2004); *see also Powell*, 59 A.3d at 539 (noting that "a final trial-court judgment operates as res judicata while an appeal is pending" (quoting 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4433 (2d ed. 1987) (italicization removed)).

Park seems to contend that the Maryland judgment was nevertheless not "a final judgment rendered on the merits" because the Circuit Court was "plainly wrong" in deeming AWB&F's requests for admissions of fact admitted even though they were "filled with the ultimate issues of the case" and "virtually nullified all of Ms. Park's counterclaim." Dkt. 20 at 7; *see also* Dkt. 24 at 3 (arguing that res judicata "require[s] a full and fair opportunity for parties to litigate in the prior or previous case"). But even if Park is correct that the Maryland court erred in deeming AWB&F's proposed facts admitted, or in relying on those admissions in rendering its decision on the merits, "[t]he mere fact that the prior ruling is wrong does not deprive it of res judicata effect." *Powell*, 59 A.3d at 538 (quoting *Garrett Park v. Montgomery Cnty. Council*, 262 A.2d 568, 571–72 (Md. 1970) (italicization removed)). Park's concession that "all of the[] issues" with the Maryland court's treatment of AWB&F's requests for admission "will be raised in Plaintiff's appellate brief," Dkt. 25 at 4, underscores the notion that any error in the trial court's decision should be corrected by Maryland's Court of Special Appeals, and not by this Court.

The Maryland court's procedural decisions to limit discovery or to deem certain facts

admitted, moreover, do not make the court's decision any less a decision "on the merits."  The

Maryland Court of Special Appeals has explained, for example, that a plaintiff who was initially

"denied leave to amend his . . . complaint to add additional claims . . . is nonetheless barred from

raising those claims in a second suit based on the same transaction or series of transactions as the

first," even if "the trial court's denial of leave to amend was erroneous" or "the trial court's

decision was based on procedural grounds instead of the merits."  *Gonsalves v. Bingel*, 5 A.3d

768, 783 (Md. Ct. Spec. App. 2010).  The Maryland court's grant of summary judgment to

AWB&F on Park's counterclaims is preclusive.  Accordingly, all of Park's claims are barred by

res judicata.

## B.    Park's Motion to Amend

The Court considers, finally, Park's motion for leave to file an amended complaint.  *See*

Dkt. 17.  Leave to amend, even without the opposing party's consent, "should [be] freely

give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), and "it is an abuse of discretion to

deny leave to amend unless there is sufficient reason," *Firestone v. Firestone*, 76 F.3d 1205,

1208 (D.C. Cir. 1996).  Rule 15 provides, moreover, that "the non-movant generally carries the

burden in persuading the court to deny leave to amend."  *S.K. Innovation, Inc. v. Finpol*, 854 F.

Supp. 2d 99, 106 (D.D.C. 2012) (quoting *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C.

2004)).  But "leave to amend should be denied when amendment would be futile," *Sai v. Dep't of

Homeland Sec.*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015), including, most notably, when "the

proposed claim would not survive a motion to dismiss," *James Madison Ltd. by Hecht v. Ludwig*,

82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also In re Interbank Funding Corp. Securities

Litigation*, 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to

amend if the amended pleading would not survive a motion to dismiss.").

In Park's own words, her proposed complaint adds substantial detail about the "particularity of circumstances and facts" at issue—detail that she contends "enhance[s] the sufficiency of the complaint."  Dkt. 24 at 2.  Indeed, the proposed amended complaint provides significantly more context about the nature of Brahmbhatt's alleged misconduct at the World Bank, Dkt. 17 at 2 (Am. Compl. ¶ 6), the fee estimates and retainer agreements provided to Park by Bender when she first retained him, *id.* at 3–4 (Am. Compl. ¶¶ 8–14), the nature of Bender's allegedly excessive bills, *id.* at 4–5 (Am. Compl. ¶¶ 14–17), the evidence and experts at issue in the sexual assault case, *id.* at 6–8, 12–13, 15 (Am. Compl. ¶¶ 19–20, 24, 41–44, 52–54), and the nature of the sanctionable conduct that Bender allegedly encouraged Park to pursue, *id.* at 10–12 (Am. Compl. ¶¶ 34–35, 37, 39–40).  Park's proposed amended complaint, moreover, adds yet another legal theory to those advanced in the Maryland litigation and in the initial complaint: that Bender "committed the tort of conspiracy to injure when he colluded with the other party with intent to injure Plaintiff."  *Id.* at 17 (Am. Compl. ¶ 62).

Notwithstanding its expanded fact section and the additional legal theory, Park's proposed amended complaint suffers from the same deficiencies as her first complaint.  Each of the facts presented, even where they differ in detail or emphasis from those in the initial complaint, relates to Bender's representation of Park in the sexual assault trial in D.C. Superior Court and in the defamation appeal in the D.C. Court of Appeals—a "factual grouping" that the Court has already concluded are sufficiently "related in time, space, [and] origin" to constitute one "transaction."  *See FWB Bank*, 731 A.2d at 928.  And once a "set of facts" such as this one "has been litigated, res judicata generally prevents the application of a different legal theory to that same set of facts," even where the "legal theories [may] depend on different shadings of fact,

20

or would emphasize different elements of facts." *Norville*, 887 A.2d at 1039 (quoting *Lockett v. West*, 914 F. Supp. 1229, 1233 (D. Md. 1995)).

Because Park's proposed amended complaint is also barred by res judicata and would therefore "not survive a motion to dismiss," *In re Interbank*, 629 F.3d at 218, the Court will deny Park's motion for leave to amend as futile.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Bender's motion to dismiss, Dkt. 7, and will **DENY** Park's motion for leave to file an amended complaint, Dkt. 17.

A separate order will issue.

> /s/ Randolph D. Moss
> RANDOLPH D. MOSS
> United States District Judge

Date:  September 30, 2022

21